Brenda ELLIS, next friend of Kelly Ellis, and Brenda Ellis and Randy Ellis, individually, Plaintiffs,

v.

TARGET STORES, INC., a foreign corporation, Defendant.

TARGET STORES, INC., a foreign corporation, Counter-plaintiff,

v.

Brenda ELLIS and Randy Ellis, Counter-defendants.

No. 1:92–CV–807.

United States District Court, W.D. Michigan, S.D.

Oct. 12, 1993.

John F. Eardley, Jensen, Eardley & Stuart, Grand Rapids, MI, for plaintiffs.

Anthony J. Paradiso, Scott A. Saurbier, Kitch, Saurbier, Drutchas, Wagner and Kenney, Detroit, MI, for defendant.

Charles H. Worsfold, Cholette, Perkins & Buchanan, John F. Eardley, Jensen, Eardley & Stuart, Grand Rapids, MI, for counterdefendants.

## OPINION DENYING MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

HILLMAN, Senior District Judge.

Plaintiffs/counter-defendants, Brenda and Randy Ellis (Ellis), allege that defendant/counter-plaintiff, Target Stores, Inc. (Target), breached its duty of care to plaintiffs, resulting in the injury of plaintiffs' minor daughter, Kelly Ellis. Plaintiffs brought this action against Target in the Circuit Court of the State of Michigan, which Target then had removed to this court on November 24, 1992. On February 26, 1993, Target filed a counter-claim against the Ellises seeking contribution in whole or in part for any recovery. In its counterclaim Target alleges that Kelly Ellis was injured as a result of the negligent failure by Brenda and Randy Ellis to use ordinary care. Plaintiffs have moved for judgment on the pleadings claiming parental immunity. Target opposes the Ellises' motion for judgment on the pleadings regarding the counterclaim.

On June 21, 1993, Target moved for summary judgment on the original claim. The Ellises oppose Target's motion for summary judgment. For the reasons set forth below, plaintiffs' motion for judgment on the pleadings is denied and defendant's motion for summary judgment is denied.

### FACTS

On September 10, 1990, Brenda and Randy Ellis, along with their two daughters, went to the Target store on Alpine Avenue in Grand Rapids to shop for mini-blinds. Upon entering the store the Ellises obtained a shopping cart that did not contain a child restraint safety strap. The Ellises assert that there were no carts available with safety straps and that they were not put on notice by way of a customer service representative or a sign that safety restraint straps were available or that such safety straps should be used. Target claims that a prominently displayed sign indicating that child safety straps were available from a cashier or customer service representative was on display near the shopping carts.

The Ellises made no inquiry as to the availability of safety straps. Instead they placed their three-year-old daughter in the child seat of the shopping cart and began their shopping. During the course of their shopping, while the cart was stopped, Kelly Ellis fell out of the cart and allegedly landed on her head. The Ellises assert that as a result of the fall Kelly suffered injuries including multiple skull fractures and a subdural hematoma, for which surgery had to be performed. The Ellises further claim that as a result of the accident Kelly has been left with speech deficits for which she now needs, and will continue to need, therapy.

### TARGET'S MOTION FOR SUMMARY JUDGMENT

Target has moved for summary judgment pursuant to Fed.R.Civ.P. 56. The Ellises oppose the motion.

1. *Standard of Review.*

Summary judgment is appropriate when there is no genuine issue as to any material fact. In such cases, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The crux of summary judgment is determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). In making this determination, the court must examine the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, drawing all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The moving party bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party demonstrates that there is an absence of evidence supporting the non-moving party's case, then the non-moving party must come forward with specific facts showing that

there is a genuine issue for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

2. *Discussion.*

■ In Michigan a premises owner must maintain his or her property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that might result in injury. *Beals v. Walker,* 416 Mich. 469, 331 N.W.2d 700 (1982). The threshold issue as to the existence of a duty of care in negligence actions must be decided by the trial court as a matter of law. *Antcliff v. State Employees Credit Union,* 414 Mich. 624, 327 N.W.2d 814 (1982).

■ Target argues that there was no duty owed to plaintiffs for two reasons. First, Target asserts that there was no dangerous condition and thus no duty existed. · Target claims that because similar shopping carts can be found in stores across the country they could not be dangerous. Target also asserts that the plaintiffs themselves did not believe that the shopping cart without a child restraint strap was dangerous. While strapless shopping carts may not be dangerous to adults shopping alone, Target was clearly aware that the carts may be dangerous to adults shopping with children. Target, in fact, argues that it prominently advertises that such carts are in fact dangerous for use with children and encourages such shoppers to obtain a safety strap. Target's purchase and use of child safety straps indicates that Target had in fact anticipated that strapless carts may be dangerous and could potentially lead to injury.

■ Second, Target argues that if there was a danger that danger was so open and obvious that there was no duty to warn. Target relies on the Michigan Supreme Court ruling in *Riddle v. McLouth Steel Products Corp.,* 440 Mich. 85, 485 N.W.2d 676 (1992). In that case the court found that "if the dangers are known or obvious to the invitee, no absolute duty to warn exists, and the invitee cannot recover on that theory." *Riddle,* 485 N.W.2d at 680. Target suggests that this case stands for the proposition that no duty to warn can exist if a danger is open and obvious. In doing so, Target misinter-

prets the Michigan Supreme Court ruling. The Court found that no *absolute* duty exists. Given that a danger is open and obvious to the invitee, the owner may still be required to exercise reasonable care to protect the invitee from danger. *Quinlivan v. Great Atlantic & Pacific Tea Co., Inc.,* 395 Mich. 244, 235 N.W.2d 732 (1975). While no absolute duty to warn exists, if the invitor should anticipate the harm despite the knowledge on behalf of the invitee there may be a duty to warn. *Riddle,* 485 N.W.2d at 680.

The *Riddle* court makes it clear that a duty may still exist:

There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes the invitee for his protection. This duty may require him to warn the invitee, or take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm. *Riddle,* 485 N.W.2d at 682, *quoting* 2 Restatement Torts, 2d, § 343A, comment f, pp. 219–220.

Given the standard outlined in *Riddle,* this court must determine as a matter of law if Target could or should have anticipated that the dangerous condition might cause injuries notwithstanding its obvious nature. Clearly, Target anticipated that injuries were possible despite the fact that strapless shopping carts might be an obvious danger. As indicated above, Target purchased safety straps and asserts it placed notices warning shoppers to use safety straps when shopping with children. It is apparent the known danger was the strapless carts themselves. Target in fact anticipated that this danger could cause injury. I am satisfied Target had a duty to warn the invitee, or take other reasonable steps to protect the invitee.

Target asserts that it did not breach this duty of care. Target claims it made straps available for shoppers and posted prominently displayed signs that informed shoppers

where they could obtain the safety straps. While the reasonableness of Target's acts would normally be decided by a jury, *Smith v. Allendale Mutual Insurance Co.,* 410 Mich. 685, 303 N.W.2d 702 (1981), Target argues that it is entitled to summary judgment because no reasonable person could find that Target breached its duty of reasonable care.

 What constitutes reasonable care must be determined from the facts of the case. *Riddle,* 485 N.W.2d at 682. Plaintiffs do not deny that Target had straps available for use. Plaintiffs assert, and Target does not deny, that Target did not have straps already attached to any carts but that straps were only available upon request. Plaintiffs assert that Target did not have an appropriate sign posted warning of the possible dangers of using a cart without a strap or informing invitees where they could obtain a strap.

Viewing the facts in this case in the light most favorable to the plaintiffs, I am satisfied reasonable persons could differ as to the conclusions to be drawn. Questions of fact exist as to whether Target exercised reasonable care under all the circumstances. As such, a jury-submissible issue exists as to whether Target met its duty to exercise reasonable care to protect invitee Kelly Ellis from the dangerous condition of a strapless shopping cart.

## ELLIS MOTION FOR JUDGMENT ON THE PLEADINGS

Target has filed a counterclaim seeking contribution from Brenda and Randy Ellis. The Ellises have moved pursuant to Fed. R.Civ.P. Rule 12(c) for judgment on the pleadings. Target opposes that motion.

1. *Standard of Review Under Fed.R.Civ.P. Rule 12(c).*

 A motion to dismiss under Rule 12(c) tests whether a claim has been adequately stated in the complaint. The standard applied by the court is identical to the standard under Rule 12(b)(6). The inquiry by the court is whether the pleading, which is examined in the light most favorable to the

party opposing the motion, sets forth allegations sufficient to make out the elements of a right to relief. *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). Well plead facts are accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 234, 94 S.Ct. 1683, 1685, 40 L.Ed.2d 90 (1974). All allegations in the pleadings are taken at face value, *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), yet all reasonable inferences which might be drawn from the pleading are indulged. *Fitzke v. Shappell,* 468 F.2d 1072, (6th Cir.1972). The motion to dismiss will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

2. *Discussion.*

 Counter-defendants, Ellis, have moved to dismiss claiming that Target's claim for contribution is barred by the parental immunity doctrine. The common law parental immunity doctrine was abolished by the Michigan Supreme Court in *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169 (1972). That court found that a child may maintain a lawsuit against his or her parents for injuries suffered as a result of the alleged ordinary negligence of the parents. *Plumley,* 199 N.W.2d at 172. That court also recognized, however, two exceptions to the new rule of law: (1) where the alleged negligent act involves an exercise of reasonable parental authority over the child; and (2) where the alleged negligent act involves an exercise of reasonable parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care. *Id.* at 172–173.

The Ellises assert that they are immune from liability based on the first *Plumley* exception; an exercise of reasonable parental authority over their child. In interpreting this first exception the Court of Appeals has consistently found that the exception of reasonable authority includes acts of negligent parental supervision. *Wright v. Wright,* 134 Mich.App. 800, 351 N.W.2d 868 (1984);

*American States Ins. Co. v. Albin,* 118 Mich. App. 201, 324 N.W.2d 574 (1982); *Hush v. Devilbliss Co.,* 77 Mich.App. 639, 259 N.W.2d 170 (1977). In doing so, however, the Court of Appeals has not been consistent in interpreting cases. At times the court has emphasized the reasonableness of the parental conduct, *Carey v. Meijer, Inc.,* 160 Mich.App. 461, 408 N.W.2d 478 (1987), *Grodin v. Grodin,* 102 Mich.App. 396, 301 N.W.2d 869 (1980), at others the court has emphasized the type of conduct the parents were engaged in. *Thelen v. Thelen,* 174 Mich.App. 380, 435 N.W.2d 495 (1989); *Mayberry v. Pryor,* 134 Mich.App. 826, 352 N.W.2d 322 (1984), rev'd on other grounds, 422 Mich. 579, 374 N.W.2d 683 (1985).

In *Grodin v. Grodin,* the child sued his mother alleging that his mother negligently took medication during her pregnancy, causing injury to her unborn son. The court remanded the case instructing the trial court to determine whether the mother's conduct was reasonable. "The focal question," that court wrote, "is whether the decision reached by a woman in a particular case was a *'reasonable* exercise of parental discretion.'" *Grodin, 301 N.W.2d at 871, citing Plumley,* 199 N.W.2d at 169. In *Carey v. Meijer, Inc.* the mother placed her child in an infant seat on a counter top in close proximity to a kitchen range. When the range was turned on, the child's blanket caught fire, causing injury to the child. Like the court in *Grodin,* that court determined that the test was whether the acts of the mother were reasonable.

In *Thelen* and *Mayberry,* the courts rejected the analysis used in *Grodin* and *Carey.* The *Thelen* court stated that by focussing on the reasonableness of the parent's act the court begged the question of whether the parent was entitled to immunity. *Thelen,* 435 N.W.2d at 496–497 n. 1. That court pointed out that the presumption of the immunity question is in fact that the parent was negligent; if the parent was not negligent there would be no need for immunity. The issue then is not whether the acts of the parent were reasonable, but whether given that the acts were unreasonable, should the parent be shielded from liability for that conduct. *Id.* Thus, that court concluded, the emphasis should not be placed upon the reasonableness of the conduct in question, but rather upon whether that particular type of conduct falls within one of the two *Plumley* exceptions. The *Mayberry* court concluded likewise.

Subsequent to *Carey, Grodin, Thelen* and *Mayberry,* the Supreme Court of Michigan developed a procedure for resolving conflicts in Court of Appeals decisions. Michigan Supreme Court, Administrative Order No. 1990–6. Under this administrative order, the Court of Appeals must follow the rule of law established by a prior decision if that decision is entered on or after November 1, 1990. The first case to re-address this issue after November 1, 1990 was *Ashley v. Bronson,* 189 Mich.App. 498, 473 N.W.2d 757 (1991).

The *Ashley* court followed the analysis and reasoning of *Thelen.* As in *Thelen,* the court stated that the question was not whether the parent's acts were negligent but whether they fall within one of the two *Plumley* exceptions. The question for this court, then, is not whether the actions of Brenda and Randy Ellis were reasonable, but whether those actions fall within one of the exceptions. The determination of whether the actions of the parents fall within one of the two exceptions is a question of law for the court. *Mayberry,* 352 N.W.2d 322.

The Ellises allege that their actions fall within the first exception; that their actions give rise to parental immunity because they concerned parental supervision regardless of how negligent that supervision may have been. Target asserts that the actions of the Ellises do not fall within the exception. Target does not seek contribution based on negligent supervision by the Ellises but rather on the theory that the Ellises committed nonsupervisory acts of ordinary negligence for which they are clearly liable under *Plumley.*

The line between acts of ordinary negligence and acts of negligent parental supervision has not been clearly defined. *Wright v. Wright,* 134 Mich.App. 800, 351 N.W.2d 868 (1984), *American States Ins. Co. v. Albin,* 118 Mich.App. 201, 324 N.W.2d 574 (1982), and *Hush v. Devilbliss Co.,* 77 Mich.App. 639, 259 N.W.2d 170 (1977), all involved clear

allegations of negligent parental supervision. Through those cases, the Court of Appeals clearly established the parental supervision rule. In *Paige v. Bing Construction Co.,* 61 Mich.App. 480, 233 N.W.2d 46 (1975), and *Haddrill v. Damon,* 149 Mich.App. 702, 386 N.W.2d 643 (1986), however, the Court of Appeals went one step further. In those two cases the Court of Appeals found that the failure to properly educate or instruct a child may fall within the rule of negligent parental supervision. In *McCallister v. Sun Valley Pools, Inc.,* 100 Mich.App. 131, 298 N.W.2d 687 (1980), the court stated that "the decision to purchase, maintain and instruct the family members as to the use of the family pool was within the management of family affairs," and thus, "involved an exercise of reasonable parental supervision over the child." *McCallister,* 298 N.W.2d at 691. While this appears to redefine the *Plumley* exception to include negligent acts of maintenance, that court found that the implicit conclusion was that "plaintiff's injuries were caused by the lack of proper supervision or instruction rather than improper maintenance of the pool." *McCallister,* 298 N.W.2d at 692. As such, that court did not expand the first *Plumley* exception beyond negligent acts of supervision and instruction.

In the present case, Target alleges that the Ellises were negligent in failing to observe prominently-displayed signs providing reminders for the safe use of the shopping carts and reminding shoppers to obtain safety straps for children. Target also asserts that the Ellises were negligent in failing to obtain a safety strap. Target does not plead direct negligent parental supervision, that is that the Ellises should be liable because they negligently supervised Kelly once she was placed in a shopping cart. The acts Target asserts the Ellises should be liable for are acts of ordinary negligence which occurred prior to any potential negligent supervision. For this court to determine that the failure by the Ellises to observe signs and to obtain a safety strap are acts of negligent supervision would be to push the line between acts of ordinary negligence and acts of negligent parental supervision past where the *Paige, Haddrill* and *McCallister* courts have placed it. This court is unwilling to expand the definition of negligent parental supervision to include acts of ordinary negligence which occurred prior to any potential acts of negligent supervision. To do so would be to allow this *Plumley* exception to swallow the *Plumley* rule.

Consequently, I am satisfied that the parental immunity doctrine does not extend to the Ellises' acts of ordinary negligence.

### CONCLUSION

After reviewing the evidence and the law, I conclude that Target was aware that strapless shopping carts provided to invitees were potentially dangerous. Despite the fact that this danger may have been open and obvious, Target anticipated that the danger might still cause injury and thus had a duty of a reasonable standard of care towards these invitees. The decision of whether Target exercised reasonable care is a question for the jury.

I also conclude that the parental immunity exception of negligent parental supervision does not include the ordinary negligent acts Target alleges were committed by the plaintiffs.

For the above reasons defendant/counterplaintiff's Motion for Summary Judgment is **DENIED** and plaintiffs/counter-defendants' Motion for Judgment on the Pleadings is **DENIED.**